

[BICKNELL v. ANDERSON]

[HENCHMAN v. ROCK]

Daniell Henchman, plaint: contᵃ Joseph Rock Defendᵗ in an accion of the case for that hee the saide Rock hath not performed Articles of Agreement relating to partnership between them & before the consummation of such Articles proposalls being made for the cessation of the saide partnership, which by the saide Rocke were accepted & the saide Rock promised to return the Estate of the saide Henchman againe, & thereupon tooke possession of all from the saide Henchman & now refuseth to make good the same, to the vallue aboue five hundred pounds, which is to the great dammage of the plaint: with other due dammages according to Attachmᵗ. Dat: Novembʳ 26: 1672. . . . The Jury . . . finde for the plaint. five hundred thirty Eight pounds ten shillings & four pence mony & costs of Court: the Defendᵗ Appealed from this Judgment to the next Court of Assistants & accordingly the saide Joseph Rock as principall in one thousand pounds & James Brading & Tho: Dewer as Sureties in five hundred pounds

apeice acknowledged themselves respectively bound to . . . prosecute his Appeale . . .

[Henchman and Rock conducted in partnership a store of general merchandise (account in S. F. 1162.8), and also owned cattle and negroes in common. There was a dispute over the accounts, and several offers of Henchman to buy out Rock were refused (S. F. 1162.4). Henchman's daughters testify to the relations between the families (S. F. 1162. 12, 13):

Hannah Henchman aged about 20 yeares saith that soe long as m$^{rs}$ Rock disposed of all the milke, & sent mee over what & at such times as she pleased, there was noe difference, but from the time it was to bee equally devided there was a continuall disturbance by m$^r$ Rock about chopping & changing what was still agreed on, about the milking of the Cowes & on a munday morning about the 2$^d$ weeke in the month of July. 1671. my Father examined Will: Lamb about taking mony from her brother Richard, who daily tooke an acco$^t$ of things & Saying the partnership was broke & forbidding him to meddle further; Hee replied yes his m$^r$ or m$^{rs}$ Rock bid him & told him soe & hee must doe according to order & that night m$^r$ Rock's Servant milked her Father's Cowes as well as theire owne & soon after & next morning a pot of milk was sent us from m$^{rs}$ Rock but returned back & alsoe the same night all the dores were locked up, & the bunches of Keys carried away ever after which used to bee brought to my Father's, soe that one night my Father was locked out of dores, the same week m$^r$ Rock came & sent often to haue the Shop cleered of my Father's goods for him, which hee tooke possession off the same weeke & therein of Severall goods with an jnvo[ice] of them, which her Father would giue him an account of although hee saide there was noe need soe to doe; after this wee were Severa[ll] times denyed water at the pump & m$^{rs}$ Rock in a flouting manner calling out to mee, saide Hannah here is water to wash yo$^r$ milk pots in, pointing to that shee had rinced her Cloathes in: but I replied not, being charged by my father to bee quiet, whatever affronts were offered, & at another time she comming into the house I heard her wish that we were gone.

Sworne in Court, 28: 11$^{mo}$ 1672. Attests Isaac Addington Cler . . .

Ann Henchmann aged about 30 yeares, saith that. . . . soon after this wee were denyed water our pail sometimes thrown away & the pin at other times taken out of the pump; & once o$^r$ Negro comming from the pump without water told mee something of the woman & the pin, upon which I went to the pump & founde the pin taken out & m$^{rs}$ Rock laughing with her armes acimbow, whereupon I went my Selfe before & after to Fetch water abroad, yet was water given away daily & m$^{rs}$ Rock's clothes brought over to rince which was never soe before, & farther saith that a few dayes before the Court of Election, wheat was Laide in the Chamber over the Hall, for want of roome as I understood.

Sworne in Court: 28. 11$^{mo}$ 1672 Attests Isaac Addington Cler . . .

Rock's reasons of appeal (S. F. 1162.3) follow:

Joseph Rock his Reasons of Appeale from the Judgment of the County Court held in Boston 28th Jan 167$\frac{2}{3}$ in the Case betwen M$^r$ Daniell Henchman plantife and Joseph Rock defendant

1 Because the Jury erred in giueng a verdict against The Said Rocke for 538$^{li}$ 10$^s$ 4$^d$ money and Cost of Court; which will apeare to bee an Errour; In that the thing Sued for in the prosese, is for not parformanc[e] of Articles Relating to partnership, and the manner how these Articles are not performed, is declared in the sd proses to bee, by not parformance of proposals for the Cesation of the sd partnership wich were accepted by the said Rock, and the Sd Rock promised to Returne the Estate of the S$^d$ Hinchman Againe & ther upon tooke posetion of all from the sd Hinchman; and now Refuseth to mack good the same; to the vallue of aboue fiue hundered pounds; The Articles being duly Considered doe not bind Rock to brack of partnershipe but to hold it Seuen yeares, nor doeth the Articles say Rock Shall Returne the estate to the said Hincksman againe; nor doe they admitt of action one against anoth[er] hauing prouided that Such deferences Shall be determined by frinds there in Expresed, Soe that there is noe Cause to Sue me for Breach or not parformance of Articles, as in Exprese terems he doth, Neither is there any Reason that Judgment Should be obtained Against mee Except that I had brocken the S$^d$ Articles which I haue not done, But if the Jurey Concluded that M$^r$ Hinchman Sued for his Estate to be made good or Returned to him, by vertue of the proposells for the Braking of partnershipe, They were (in my opinion) in a duble Error; First M$^r$ Hinchman doeth not Sue for his Estate to be Returned, Except it be according to the Articles or else quit[e] Contrary to the Articles, Now if it be according to the Articles that hee Sueth there is noe Cause of Action be Cause the partnershipe [is] to Continue Seauen yeares, Or if it bee quite Contrary to the Articles that he soe demands, Why doth he sue for non parformance of them, by not deliuering the Estate, there is such A Contradiction in the Attachment as Renders it Fondementally Erronious; The Case is not here under stood, whether M$^r$ Hinchman Sued for not parformance of Articles or not parformance of Collaterale proposalls, If they are Called two Accitions in one Attachment I Answare; It is not Rationall for two Acctions in one Attachment, to be for one and the same thing, Neither is there two Actions But one Action grounded upon two Cases that are absolutly Contrary one against another, Soe if one doe stand the other must fall Heare is an Estate Sued for to be made good by the Articles and Contrary to the Articles by the propossells, If Such proses are Right who will feare euer being Non Suted or Cast

2 The secount Reason of Appeale, is because the propossells for disoluing the Artticles of partnershipe was neuer Consumated and Consequentley the Articles not Nullified but yet stand good against and for both parties, now if the Articles are not Nullified nor the partnershipe disolued it is very aparan[t] the Judment against Rocke is erronious That the propossill was not Cunsumated will Euidently Appeare by the particalers following which I Humbley begg this Honoure[d] Court and Jurey to be Serious in the Consideration of & I hope y$^t$ will giue Light to a Right Consideration of the Case

i The propossells were neuer Concented unto nor understood, by both parties if by either of them, and for the proofe of this I referr the Court and Jurey to that Numerous Companey of Euedences, which M$^r$ Hinchman produced against me, Amongst all which there is not one Expresseth that there was a full Agrement betweixt us, but they all in one agree thatt at all oure metings and in all oure discourses there was deferences betwixt us about the intreast of Money and Lost of Negroes & The Quantaty and Quality of what M$^r$ Hinchman had put in to partnershipe, Soe fare then are these propossells from Nullifieng the partnershipe,

that they were not agreed upon and neuer Amounted to the vallidatie of a Verble Bargaine, It is true if M$^r$ Hinchman would haue bine as Good as his word, in for baring the Money for A yeare with out Interest & in alowing his part of the Lost of Negroes and giueing A Sattisfactary accoumpt of his transactions in the time of his keeping of his accoumpts, and had Cleared yet to me by his accoumpt Corrant and other Accoumpts how much he had truely put in to Stock, Then had there bine a verball Bargaine betwixt us for the Cesation of partnershipe, and I must haue Returned him his Money Accordingly; If it Could be Judged good in Law That a verble Bargaine were Sufficient to Null and desolue Aarticles of agreement vnder hand and Seale; A pressedent for which is not to bee found as I humble Conceue Especially were the teremes of the verball Bargaine or rathere propossalls was neuer parformed now agreed to How then can the artacles be disolued; which I leue to Consideration; For that Articles and all Couinents under hand and Seale are not Nullified Except by Sume act good in Law of Like vallidity

2   M$^r$ Henchman owned that the Artacles were not to be Conseled untell Rock had parformed his agrement for desolving them as by M$^r$ John Hull deposetion, If soe then the Question is whether Rock hath parformed his agrement, If he hath not Then are the artacles good and the Judgment Wronge, if he hath parformed his agrement then there was noe Chanse of action

3   My Remaning in possetion or M$^r$ Hinchman Leauing possestion may if it be said I E[y]liceted or dispososed M$^r$ Hinchman of all yet doeth not that either disolue the Articles nor Conferme and Consumate the proposalls It doth not disolue the Artacles for by them may he Sue for and obtaine possetion againe or the forfuture of A Thousand pound, nor doeth yet Consumate the proposalls which can not be Confermed Except the Artacles bee Nullified, it can not be Reason that be cause M$^r$ Hinchman hath left me in possetion that I must therefore be bound to Such termes as was Neuer agreed upon

4   Againe it will appeare from the Bond of Arbitration Dated 24th of August 1672 That the Articles of Partnershipe was not disolued Nor the proposalls Conseumated, by Caus the Thing put to Arbitration was Seuerall Question Doubtes and deferances depending betwixt Joseph Rock and Daniell Hinchman, about Partner Shipe and accoump[t] there unto Refering. And not at all relating unto the deferances betwixt them Concerning the terems vpon which the Partnorship Should cease or End. This Euidence under hand and Seale of Hinchman, as wele as Rock I hope it is plainely demonstrated that y$^e$ Articles of partnershipe are not Nullified nor the proposall confermed Therefore the Judgmen not Rright

3   The thurd resan of Appeale, Is be Cause that upon the Suposition that the Articels was Nulled, And the partnershipe disolved, by the proposalls, And that Rock was bound to make good M$^r$ Hinchman estate which he had in partnershipe, yet is the Judgment Eronious, in Regard it is founded upon a Ronge Basis, as will Appeare by the following particulers being Considered

Either the Judgment was grounded upon the Accoumpt, which M$^r$ Hinchman gaiue in and Sworne unto or else upon the Testimones,

i   If upon the Accoumpt there was no Ground to find against Rock By that, as may Appeare by M$^r$ Hinchman proposalls for Agrement upon which the partnershipe was to seace upon In which he hath Expresely Said that M$^r$ Hinchman was to deliuer Rock the s$^d$ Hinchman Accoumpt Curant of what the Stock was Debter to him upon oath, I Begg the Court and Jurey to Compare the Accoumpt which he Sued me upon and unto which he did take his oath in Court,

with the proposalls and it will planily Appeare that the Accoumpt is Intiteled Sock in partnershipe betwixt Joseph Rock and Daniell Hinchman Debter, And not Daniell Hinchman his accompt Curant Debter, Soe that the Accoumpt by which he Sued is not the Accoumpt by which I was Bound by according to his one Confesion  If he will Sue me for Not acting acording to them proposalls and deliuering his Estate, he Should haue Sued by the Same Accoumpt which according to the proposalls was to determen how much that Estate was and not by any other Accoumpt

|  | li | s | d |
|---|---|---|---|
| 2   Againe the Judgment Could not be grounded upon this Accoumpt Because the Ballance of the Accoumpt being . . . . . . . . | 591 | 15 | 01 |
| doth not agree with the Judgment which is for . . . . . . . . . . . . . . . . | 538 | 10 | 04 |
| Soe that there is deferance betwixt the Ballance Sworne to and the Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 053 | 04 | 09 |

It is plaine $y^t$ the Accoumpt is fals or at Least not Appeareing True to the Jurey, If the Judgment was Grounded upon the Accoumpt They Should haue found ether the Ballance or Nothing

3   Againe if the Judgment was grounded upon the Testimonies as it Appeares it was It being Agreable to $Cap^t$ Savedges Testimones and $M^r$ Brattels, which Say that by $M^r$ Hinchman[s] Books he is Creditor upon $y^e$ Accoumpt of Ballance $538^{li} — 10^s — 4\frac{1}{2}^d$ which is with in a halfe penney of the Judment  If it be grounded upon these testimoneys it hath no Ground at all being Rightly Considered,

i   $M^r$ Brattell and $Cap^t$ Savedge was not made Auditors of the Accoumpte by the Court in this Case therefore there Testimoneyes noe Euidence to the Jurey Concerning the truth of the Accoumpt

2   They doe not Afferme that there is $538^{li}$ $10^s$ $4^d$ due to $M^r$ Hinchman to Ballance Butt $Cap^t$ Savedge Saeth that $M^r$ Hinchman is Credetor Soe much upon the Accoumpt of Ballance in his Bookes and $M^r$ Brattell Saeth there was Soe Much due by the Ballance of the accoumpt of Cash, and both they and all the Rest of the witnesses doe not Afferme the Accoumpt to be true, the most they say they appeare Soe to them as they are Stated, they are farr from Attesting them true; That they onely declare the see noe Errors and thinke them True

3   $M^r$ Hinchman onne oath to the Accoumpt put in to Court, that it is a True and Just Accoumpt to his Knowledge proues his Accoumpts in his Bookes not to be true By $53^{li}$ $04^s$ $09^d$ and Richard Hinchman in his oath Mentions $545^{li}$ $01^s$ $08^d$ to be payd in by his Father Soe that heare is two oathes $M^r$ Hinchmans and his sonne to proue that the Ballance of $538^{li}$ $10^s$ $4^d$ is not Right which $Cap^t$ Savidge and $M^r$ Brattell doe not Afferme is true, I Leaue it to the Honoured Court and Jurey to Conceder what Littell Ground the Jurey had Soe to find against me Concedering the premises which I suppose are Sufficiently proued

i   That the proposalls was Neuer agreed upon Concented to, or understood by both if by Either partys and therefore Could not Cutt of the Articles

2   That the Articles of Parnorshipe are not Broken nor the Partnershipe disolued, which doe not bind Rock to deliuer or Returne $M^r$ Hinchman his Estate

3   Then was there noe Resion why Such a Judgment nor Indeed Any Should haue bine Geuin in against me either by the Accoumpt produced in Court and Sworne too, or by $y^t$ Testimoney which Accoumpt and Testimoney are Soe Contradictory one to the other,  I pray pardon for my prolixity  It is not my desire

to doe M^r Hinchman Ronge Neither would I be to great a Sufferer by Him, The Lord direct this Honered Court and Gentellmen of the Jurey to a Rrigh Judgment the which is the prayer of him who is your humble Sarvent        Joseph Rock

These Reasons were received by the hands of m^r James Brading Feb^ry 26th 1672 about: 4: a clock afternoon
                              as Attests Isaac Addington Cler

Henchman's answers to these reasons of appeal are in S. F. 1162.5. They appear to have been effective.]